Aikin *v.* Davis.

---

## Aikin and others *vs.* Davis.

The defendant, in September, 1862, wrote to one of the plaintiffs, at New York, saying that he had a lot of hops to sell, and asking what he could get for them. The plaintiffs answered, stating the market price, and asking information as to the quantity, &c. The defendant replied, October 4, 1862: "If you can give me 12½ cents per lb. at my place [North Chili] I will send them to you, after receiving a line from you. I have about 12,000 lbs." The plaintiffs answered by telegraph, October 11: "Will take your hops at offer. Ship them immediately. We write." On the 14th of October the defendant wrote, saying he was busy baling the hops; that he would ship on Monday of the next week. Perhaps he might on Saturday, but doubtful—Monday sure: If that would answer, "write immediately." On the 17th of October the plaintiffs wrote: "It is not too late. Please ship on Monday or just as soon as you can get them ready." On the 24th of October the defendant wrote that he found he could not ship the hops in time to get the returns before he wanted the money, and that he could sell them at home, &c. The plaintiffs proved that they were ready and willing to pay for the hops in the city of

Aikin *v.* Davis.

New York, and that the defendant admitted, before the trial, that he had sold them.

*Held*, 1. That if the letter of October 4th and the telegraphic answer of the 11th, amounted to a contract, the effect of the subsequent letters was to alter the proposed time of delivery to Monday, and to modify, to that extent, the defendant's offer, but they in no way affected the other terms proposed.

2. That conceding that the letters, taken together, made out a contract for the sale of the hops, the contract was, that the defendant would sell the plaintiffs about 12,000 pounds of hops at twelve and a half cents per pound, payable at North Chili, and would ship them on the succeeding Monday, or as soon as they could be got ready.

3. That in order to entitle the plaintiffs to a delivery of the hops, it was necessary for them to make a tender of the purchase money.

4. That the delivery and payment were to be simultaneous. That nothing in the contract called for a shipment to New York, before payment, or allowed a payment any where else than at the place designated in the defendant's letter.

5. That until payment was tendered, the plaintiffs had not performed the contract, on their part, and were not in a condition to require performance from the defendant.

6. That an offer, by letter, on the 24th of October, that if the defendant would ship the hops and send the plaintiffs the railroad receipt, they would send him a certified check, was not a valid tender; being an offer to make payment in a mode different from the terms of the original offer, and made after the time of delivery fixed by the letters.

7. That there was nothing, in the admission of the defendant that he had sold the hops, to relieve the plaintiffs from the obligation to tender payment; it not appearing *when* the hops were sold.

APPEAL from a judgment entered on the report of a referee. The plaintiffs sued the defendant to recover from him damages for the non-delivery of a quantity of hops, on an alleged contract for the sale of them. The defendant, in September, 1862, wrote to one of the plaintiffs, that he had a lot of hops to sell, and asking what he could get for them. The plaintiffs answered, stating the market price, and asking information as to the quantity, &c. This was answered by the defendant, who wrote as follows: "If you can give me 12½ cents per lb. at my place, I will send them to you after receiving a line from you. I have about 12,000 lbs." The date of this letter was 4th of October, 1862. The plaintiffs answer by telegraph: "Will take your hops at

offer. Ship them immediately. We write." This was on 11th of October, 1862. On 14th October, 1862, the defendant wrote saying, he was busy baling his hops. That he could ship on Monday of the next week, perhaps he might on Saturday, but doubtful—Monday sure. If that would answer, " write immediately." On 17th of October, the plaintiffs wrote, "It is not too late. Please ship on Monday or just as soon as you can get them ready." On 24th of October, the defendant wrote, "I found that I could not ship my hops to you in time that I might get the returns when it was necessary that I should have the money ; and I can sell them at home and have the money in time to meet my demands." The plaintiffs rely on this corespondence to make out the contract.

The defendant had sent the plaintiffs a sample bale for inspection. The plaintiffs proved that they were ready and willing to pay for the hops, in the city of New York. The only proof that the defendant had sold the hops was that he told one of the plaintiffs so, about two weeks before the trial.

The case was referred to a referee, who found a good and valid contract for the sale of the hops was made between the parties, and that the refusal to send the hops to the plaintiffs was a breach of the contract entitling them to damages, and rendered judgment for the plaintiffs. The defendant duly excepted, and appealed from the judgment.

*A. J. Wilkin*, for the appellant. I. There was no contract between the parties. The several propositions put forth by either party were never assented to by the other. A careful analysis of the correspondence will show this. The defendant's letter of October 4 contains the first proposition : "If you can give me 12½ cents per pound at my place, I will send them to you soon after receiving a line from you." On the 14th, ten days after the proposition was made, the defendant received a telegram, purporting to be from the plaintiff.

Aikin *v.* Davis.

They say: "Will take your hops at offer; ship them *immediately.* We write." It is apparent that thus far the minds of the parties had not met. The defendant was in process of gathering, drying and baling his hops; hence he said "I will send them *soon after* receiving a *line,* &c." The plaintiffs' counter proposition is, "ship immediately." The learned referee finds that this was an unconditional acceptance and a contract complete, and upon which he bases his order for judgment in favor of the plaintiffs. In this the referee erred, and the judgment should be reversed for this reason. (1 *Parsons on Cont.* 400, 1, 2. *Jordan* v. *Norton,* 4 *M. & W.* 155. *Hutchison* v. *Bowker,* 5 *id.* 535. *Vassar* v. *Camp,* 1 *Kern.* 441. 2 *Sandf.* 133. 26 *Wend.* 341. 26 *E. L. and Eq.* 522. 4 *Wharton.* 369. 3 *Wend.* 459.)

II. If we are wrong in supposing there was no contract, then we insist that the plaintiffs did not perform or offer to perform the contract on their part. Nor is there any evidence of non-performance on the part of the defendant. The contract, if any existed, was as found by the referee in his second finding, "to sell his lot of hops at the price $12\frac{1}{2}$ cents per pound, at his place in Chili." This proposition the referee finds was unconditionally accepted on the 11th of October. It is apparent from the language used by the defendant, that the prominent thought in his mind was, that the transaction should be consummated at "his place." At this time buyers were in the country paying eleven to thirteen cents per pound. The defendant had come to New York with his hops twice before this, and he may have had good reasons why he wished to do the business at "his place;" hence he was particular in fixing "his place" as the place where payment and delivery were to be made, and so the referee finds. This is the necessary construction of the finding of the referee; because he does not find that *by the terms* of the contract the payment and delivery were to be made *elsewhere.* This view is still further strengthened by the

fact that the referee finds that on the 14th October, (the contract being completed on the 11th,) the defendant, by an independent arrangement, promised to ship the hops to the plaintiffs, and bases the breach, not on the contract of sale, but on his subsequent promise to ship. But the question is put at rest by the finding of the referee at fol. 86, where it is conceded by the referee that the mode and kind of payment suggested by the plaintiffs in their letter of 28th of October, was not the one provided for in the original contract. So that it is beyond dispute that payment and delivery were to take place at Chili.

III. There is not a particle of evidence in the case showing that the plaintiffs ever tendered, or were ready to tender, payment on delivery of the hops at the defendant's place. This is conceded by the plaintiffs, and the learned referee, to meet this branch of the case, is compelled to make a new contract for the parties. So he finds, that if the mode of payment, as suggested in the plaintiffs' letter of October 28, was not satisfactory (according to the first agreement) to the defendant, it was his duty to have answered the proposition and directed as to the mode and place of payment, and that his silence must be taken as evidence that the mode proposed was satisfactory to him; in other words, because the defendant did not accept a new proposition, did not agree to a new contract, therefore he did agree to it. The letter of October 28 imposed new conditions, and called upon us to do what we were not bound to, and made the doing of these a condition, not of payment even, but of sending by mail a promise to pay of a third party. But in addition to all this, there is not the slightest evidence in the case that the letter of the 28th of October, containing this new proposition, was ever received by us, or that it was ever mailed even. We take it, the law don't call upon us to assent to a proposition till we have heard of it.

IV. There is no evidence that we were not ready to deliver on payment. Payment and delivery were to be simultaneous;

no credit was to be given. The defendant was not to take the charge, expense or risk of delivery in New York; on the contrary, he was to sell the hops at Chili, not at the plaintiffs' warehouse in New York. The learned referee is compelled to take this view of the case, for he finds that the plaintiffs, on the 11th of October, unconditionally accepted the offer of the defendant made on the 4th; that the contract was in all its parts completed on that day; and that *afterwards,* and on the 14*th of October,* the defendant *promised to ship the hops to the plaintiffs.* Here it will be seen that the referee finds that it·was no part of the original contract of sale that the hops were to be delivered elsewhere than at Chili, but that, by a subsequent *naked* promise, they were to be shipped to New York. He finds two contracts — one of sale, where the terms of price, place of payment and delivery, are all agreed upon; and another, to do something about the goods as bailee of the plaintiffs. Now the referee nowhere finds that we have refused to deliver the hops pursuant to the contract of sale, and *upon which this action is brought;* but finds that a good and valid contract for the sale of said hops of the defendant to the plaintiffs, was made (he does not tell us what the terms of this contract were here, where payment and delivery were to be made,) and that a refusal to send the hops forward to the plaintiffs, was a breach of the contract. Which contract is thus broken the referee fails to inform us, but we have a right to assume it was that contract in which he agreed to send them forward, and not the one in which we did not so agree. We insist, therefore, that there is no evidence that we refused to deliver according to the terms of the contract, nor has the referee found as a *matter of fact that we so refused,* and until this *fact* is found the judgment can not stand.

V. The referee erred in admitting in evidence the letters under date October 27 and 28. There was no evidence that they were *written* by the plaintiffs, nor *mailed,* nor *received* by the defendant. They contained new proposals, which, if

received, we were not bound to accept. They are simply the statements of the plaintiffs, and they bear a very important part in the referee's findings.

VI. The referee finds (incidentally by way of parenthesis) that before the commencment of this suit, the defendant sold the hops to other parties. Now, strange to say, there is not a particle of evidence in the case of this fact. Aikin, one of the plaintiffs, was at Mr. Davis' place two weeks before the day he was sworn as a witness, at which time Davis told him he had sold the hops. The suit was commenced January 7, 1863, six or seven months before the conversation. It does not appear *when* he sold the hops. But the referee did not put the breach on this ground, but put it on the refusal to send forward.

*E. Brown*, for the respondents. I. The contract was fully made and completed when the plaintiffs unconditionally accepted defendants's offer to sell his hops, by telegraph, October 11, 1862; the defendant so understood it; he promised to ship the hops on the Saturday following, and certainly on the next Monday; inquires if that will be in time, and plaintiffs immediately reply that it will. (*Story on Cont.* §§ 379–386, *also* 384. *Mactier* v. *Smith*, 6 *Wend.* 103, (*note*, 117.) *Vassar* v. *Camp*, 14 *Barb.* 341. *S. C.* 1 *Kern.* 441. *Brisban* v. *Boyd*, 4 *Paige*, 17. *Clark* v. *Dales*, 20 *Barb.* 42.)

II. No definite time was fixed for the performance of the contract; the defendant could not, therefore, dispose of his hops, without first giving the plaintiffs a notice to that effect. The hops were to be weighed and baled; this was a necessary preliminary to the plaintiffs' paying for the hops at all. They were entitled to notice that the hops were weighed and baled, before they could by any possibility be said to be in default, so as to give the defendant any right to repudiate the contract and sell the hops to other parties. See letters October 14th, 11th and 17th. (*Cook* v. *Ferral*, 13 *Wend.* 287. *Clark* v. *Crandall*, 3 *Barb.* 614. 27 *id.* 73.)

Aikin *v.* Davis.

III. It is not the contract, nor was it the understanding of the defendant, that payment for the hops was to be made to him, at North Chili, before shipment; all the facts in the case repudiate such a supposition. (*a.*) The hops were to be baled and weighed; the offer of the defendant to sell at 12½ cents, at North Chili, meant simply that the hops were to net defendant 12½ cents at that place; in other words, that he was not to be held liable for transportation. (*b.*) That this was defendant's understanding of the contract is shown by defendant's three letters, of October 4th, 14th and 24th; in which he says: "If you can give me 12½ cents per lb. at my place, *I will send* them to you," &c. (*Letter of October,* 4.) Again he says: "I am very busy baling my hops; it will be impossible for me to finish before Saturday. *I can ship* the hops to you on *Monday*, perhaps on *Saturday*, but doubtful; *Monday* sure." (*Letter of October* 14.) In his letter of October 24, in which he declined to deliver the hops, he does not base his refusal to do so on the ground that he had not been paid or offered to be paid by the contract for his hops at North Chili, but on the sole ground that he could not get the money soon enough for his purposes; his own words are: "I found that I could not ship my hops to you in time that I might get the *returns*, when it was necessary that I should have the money; and I can *sell* them at home, and have the money in time to meet my demands. Under the circumstances, I *shall sell* them at home." (*Driggs* v. *Dwight*, 17 *Wend.* 71. *North* v. *Pepper*, 21 *id.* 636. *Crary* v. *Smith*, 2 *N. Y. Rep.* 60.)

IV. Payment, or tender of payment, was not necessary; especially after the defendant had sold the hops to other parties and put it out of his power to carry out the contract and refused to deliver the hops. Under the circumstances, it was enough for the plaintiffs to show that they were always ready and willing to carry out the contract. (*a.*) The referee has found that the plaintiffs were always ready and willing to receive and pay for the hops on delivery. (*b.*) The pleadings

admit such fact; the complaint alleges that the plaintiffs were *always ready and willing to receive and pay for the hops at all times after the making of the contract;* this is not denied by the answer. The denial in the answer is, "that the plaintiffs have performed the said agreement, or any part thereof." The answer also denies (an allegation *not averred in the complaint*) "that plaintiffs have offered to perform their said alleged agreement, or any agreement." It was not necessary to allege an offer to perform, or prove it. (21 *Wend.* 636. 2 *N. Y. Rep.* 60.) (*c.*) The allegation, therefore, "that plaintiffs were always ready and willing to pay for the hops on delivery" is a fact found by the referee and admitted by the pleading; *it could not be disproved.* The plaintiffs' request is not denied. (*Code,* § 186. *Occhs* v. *Cook & Son,* 3 *Duer,* 161.) (*d.*) A judgment rendered against an admission in pleadings will be reversed. (*Bridge* v. *Payson,* 5 *Sandf. S. C. R.* 217. *Cowen's Treatise,* § 1402.) The parts of complaint *not specifically denied are admitted.* (*Levy* v. *Bond,* 1 *E. D. Smith,* 173. *Crary* v. *Smith,* 2 *N. Y. Rep.* 60.) (*e.*) After the defendant had sold the hops it was not necessary to go through the idle ceremony of a tender. (*Coonley* v. *Anderson,* 1 *Hill,* 523. *Ransom* v. *Johnson,* 1 *East,* 203. *Vail* v. *Rice,* 1 *Seld.* 155. *Dunham* v. *Pettee,* 4 *id.* 508.) (*f.*) Where tender is necessary, evidence of transfer is sufficient to support a plea of tender. (*Holmes* v. *Holmes,* 5 *Seld.* 525.) (*g.*) The complaint alleges that the defendant had sold his hops and put it out of his power to perform his said agreement; this is not denied by answer; it is therefore *admitted* by pleadings.

V. In any view of the case, the plaintiffs fully carried out their contract; they could not pay for the hops, or even make tender of payment, until they were weighed and baled, and the quantity ascertained. The defendant was then bound to give them notice of such facts, and of his readiness to deliver, before he could put them in default, so as to entitle him to sell the hops to other parties. This he never did do,

and based his refusal to deliver on the sole ground that he could not get his *returns* in time to use the money for purposes to which he wished to apply it; admitting that he was to be paid by *returns* after delivery to the plaintiffs in New York, and not at North Chili, on delivery there. Even this objection the plaintiffs immediately proposed to obviate by sending him a certified check on the delivery to them of the railroad company's receipt and the defendant's bill.

VI. The letters were sufficiently proved; were pertinent and admissible. Whether the proof of authenticity was sufficient, was a question for the referee; and if there was any evidence of that fact, his finding is conclusive. The exceptions to the ruling of the referee admitting the letters, are therefore groundless.

VII. The propositions made on the motion for a nonsuit all rest on the leading fact of contract or no contract. If there was a good contract, the plaintiffs did all they were required to do by its terms, and a sale of the hops by the defendant to other parties was a clear breach of the contract on his part.

VIII. The allegation in the complaint that the plaintiffs have always been ready and willing to pay for the hops and in all things performed their part of said agreement, were not necessary to be averred or proved, inasmuch as the defendant had sold the hops and put it out of his power to perform the contract. (*See Clarke* v. *Crandall,* 27 *Barb.* 73.)

*By the Court,* INGRAHAM, P. J.    The first question which arises on this appeal is what contract, if any, was entered into between the parties. The letter of the 4th October, with the telegraphic answer of the 11th, are the only portions of the correspondence from which such contract can be inferred. It may be doubtful whether they did show such contract. The defendant's letter proposed sending them soon after hearing from the plaintiffs, while the telegraphic answer required them to be shipped immediately. The defendant

could not comply wth this direction, and wrote that he could not deliver before the next Monday, and inquired if that would answer. This was answered by saying a delivery on Monday, or as soon as they could be got ready, would suit. The effect of the subsequent letters was to alter the proposed time of delivery to Monday, and to that extent modified the defendant's offer, but they in no way affected the other terms proposed. There is however no answer from the defendant undertaking to send the hops on that day; and it is by no means clear that there was any acceptance of the plaintiffs' offer to purchase and an agreement to deliver as proposed. The only answer to the plaintiffs' letter of 17th October being a refusal to send them, and the statement that the defendant could sell them at home.

But conceding that these letters taken together made out a contract for a sale of the hops, the next question is, what was the contract between the parties? It was that the defendant would sell the plaintiffs about 12,000 pounds of hops at 12½ cents per pound, payable at the defendant's place (North Chili;) and would ship them on the succeeding Monday, or as soon as they could be got ready. In order to entitle the plaintiffs to a delivery of the hops, it was necessary for them to make a tender of the purchase money. The delivery and payment were to be simultaneous. Nothing in the contract called for a shipment to New York before payment, or allowed a payment any where else than at the place designated in the defendant's letter. In fact the price was based upon the place of payment, being at the defendant's place. There is no proof of any tender of payment any where, and until that was done the plaintiffs had not performed the contract on their part, and were not in a condition to require performance from the defendant. The testimony of Ferry is clear that they never made any tender of payment, and no offer except in the letter of 28th October. This letter contained an offer if the defendant would ship the hops and send the railroad receipt, they would send him

Aikin *v.* Davis.

a certified check. This was no tender, and it was an offer entirely to make payment in a mode different from the terms of the original offer. It was an offer also made after the time of delivery as fixed by the letters, and the vendor had a right after that time had elapsed without a tender, to refuse performance. It was his place to be ready at North Chili to deliver the hops on Monday on receiving payment. If no payment was offered, there was no obligation to deliver. I think therefore the referee erred in his finding that the refusal of the defendant to deliver was a breach of the contract.

I think, also, he was in error in finding that if the mode of payment proposed by the plaintiffs was not satisfactory to the defendant, it was his duty to have directed as to the mode and place of payment, and that his silence must be taken as evidence that the mode proposed was satisfactory.

On the contrary, the mode and place of payment was fixed in the original offer, viz: to be made to the defendant at North Chili, and such payment was to be in money. Neither party could change it without the assent of the other, and no direction was necessary to make a compliance with the contract requisite before the plaintiffs could enforce a delivery.

It was said on the argument that no tender was necessary, because the defendant had put it out of his power to deliver, by selling the hops to another party. There is no proof to warrant such a conclusion. The time fixed for the delivery had passed, and no payment had been tendered. A delay of a week after, took place before the defendant wrote the letter of the 24th October, saying he should sell them at home. The only proof that he did sell them was his admission, two weeks before the trial, that he had sold the hops. When they were sold is not stated, and there is nothing in that evidence to relieve the plaintiffs from the obligation to make the offer of payment before they could demand the property or claim damages for the non-delivery.

The report and judgment must be set aside and a new trial ordered ; costs to abide the event.   Case referred back to the referee.

·[NEW YORK GENERAL TERM, September 19, 1865.   *Ingraham, Leonard* and *Sutherland,* Justices.]